448 So.2d 42 (1984)
STORAGE TECHNOLOGY CORP. and Travelers Ins. Co., Appellants,
v.
Bonnie PHILBROOK, Appellee.
No. AT-384.
District Court of Appeal of Florida, First District.
March 30, 1984.
*43 Robert G. Brightman, Travelers Insurance Co., Orlando, for appellants.
Bruce W. Jacobus, of Wolfe, Kirschenbaum, Caruso, Mosley & Kabboord, Cocoa Beach, for appellee.
WENTWORTH, Judge.
Employer/carrier seek review of a workers' compensation order by which claimant was awarded wage loss benefits. We affirm the deputy's award based on his determination that claimant did not voluntarily limit her income.
In March 1982 claimant sustained an industrial injury which was subsequently diagnosed as a ruptured intervertebral disc. Dr. Seig treated claimant conservatively for several months, during which time her objective symptomatology stabilized with a normal range of motion. A CAT scan was performed, and revealed disc bulging consistent with herniation. Dr. Seig thought that claimant reached MMI in September 1982, and suggested that she avoid strenuous activity, bending, stooping, twisting, and heavy lifting. Although claimant continued to complain of pain and the inability to sit or stand for prolonged periods, Dr. Seig nevertheless felt that claimant could return to her former employment as an office worker and the doctor released claimant to do so. Claimant thereafter did attempt to return to her former job, but found that her employment activities were too strenuous and produced disabling pain. Dr. Seig was contacted and he provided a modified work release limited to four hours per day. Although she attempted to comply with the release, claimant testified that she was physically incapable of continuously performing even this limited amount of work. Without attempting to modify claimant's work responsibilities to accomodate her reported symptoms, the employer terminated claimant's employment due to her failure to perform in accordance with the terms of her work release.
Claimant thereafter made a work search and sought wage loss benefits; employer/carrier controverted, taking the position that claimant had voluntarily limited her income by failing to return to her former employment in accordance with the terms of her work release. A hearing was held, and the deputy commissioner expressly declined to accept Dr. Seig's opinions "as they pertain to the extent of claimant's injuries and her physical limitations." The deputy found that claimant had sustained a herniated disc and, although she tried, was physically unable to consistently work four hours per day in accordance with her work release. The deputy therefore awarded wage loss based on findings as follows:
I find that the Claimant was injured when she stepped out of a temporary trailer at her place of employment and fell to the ground as the stairways leading to the temporary structure had been removed for maintenance... . Dr. Seig was of the opinion that the Claimant sustained a herniated disc at L5, Sl. Dr. Seig was further of the opinion that she sustained a 5 percent permanent impairment in accordance with the AMA Guides. I accept his opinion as it relates to the Claimant sustaining a permanent impairment. However, Dr. Seig did release the Claimant to go back to work on a limited basis on September 2, 1982, suggesting that she work 4 hours per day with no lifting... . I do not accept Dr. Seig's opinions as they pertain to the extent of the Claimant's injuries and her physical limitations. Dr. Seig, in July of 1982, appeared to have made up his mind as to the extent of the Claimant's ability to return to work. Dr. Seig did not recede from his July 1982 opinions as to the Claimant's ability after receiving the August 23, 1982 report of the positive CAT scan and her continuing severe complaints consistent with the results of the CAT scan. Dr. Seig performed no further *44 diagnostic testing, nor did he change the restrictions on the Claimant's ability to work. The Claimant did return to work and tried to work 4 hours a day and testified that she had considerable difficulty in doing so. She was unable to work some days and could only work an hour on other days... . Claimant did not refuse to perform work that was in her physical capability, but was faced with an inflexible standard set up by her employer that she was unable to meet... . Based upon the Claimant's testimony as to the continuing problems that she has with the injury to her back and based upon the job search that she undertook after being terminated by the Employer, ... I find that the Claimant is entitled to wage loss benefits... .
The deputy may reject, in whole or in part, uncontroverted testimony which he disbelieves, see John Caves Land Development Co. v. Suggs, 352 So.2d 44 (Fla. 1977), and our cases hold that:
... lay testimony is of probative value in establishing matters such as the existence and location of pain ... and the inability of a claimant to perform certain work. ... "disability is not a purely medical question: it is a hybrid quasimedical concept, in which are comingled in many complex combinations the inability to perform, and the inability to get, suitable work." [emphasis supplied]
Sanlando Utility Corp. v. Morris, 418 So.2d 389 (Fla. 1st DCA 1982), fn. 2. The opinion in Decks, Inc. of Fla. v. Wright, 389 So.2d 1074 (Fla. 1st DCA 1980), recognizes that:
... reasonable medical probability may be established by medical or lay testimony. Orange County Board of County Commissioners v. Brenemen, 233 So.2d 377 (Fla. 1970); Aerospace Fabrication, Inc. v. Dodge, 8 FCR 339 (1974)... . `Lay testimony is of probative value in establishing such simple matters as the existence and location of pain, sequence of events and actual ability or inability of the claimant to perform work.' Id. at 340-41. We construe this language to mean that lay testimony can establish the necessary relationship as to conditions and symptoms which are within the actual knowledge and sensory experience of the claimant. [emphasis supplied]
As indicated in Square G. Construction Co. v. Grace, 412 So.2d 397, 399 (Fla. 1st DCA 1982), quoting Mendivil v. Tampa Envelope Manufacturing Co., 233 So.2d 5 (Fla. 1970):
Florida workers' compensation law ... has always recognized: That, in proper circumstances, temporary medical or functional disability may be proved by lay testimony: ... lay testimony is often sufficient to sustain a compensation award, even though it conflicts with medical testimony ... (emphasis supplied) See also Crowell v. Messana Contractors, 180 So.2d 329, at 330 (Fla. 1965).
And Grace notes, at footnote 3, that:

With respect to a claimant who testified that back pain and immobility prevented work, in conflict with a physician's opinion that he was physically able to work, the Court has found that the trier of fact `had a right, as a matter of law, to accept the opinion of the Tampa physician on this point or to reject it and base his conclusions on the testimony of the claimant ...' Star Fruit Co. v. Canady [159 Fla. 488], 32 So.2d 2, at p. 4 (Fla. 1947). [emphasis supplied]
An unreasonable refusal to attempt offered employment within the terms of a medical release may of course constitute a voluntary limitation of income under § 440.15(4)(b), Florida Statutes, see Paul Lawhon Plumbing Co. v. Cave, 427 So.2d 1093 (Fla. 1st DCA 1983), and "bare complaints of continued pain" generally do not of themselves obviate the need for a work search or employment effort. See e.g., Lindsley Home Care Centers v. Fuster, 413 So.2d 810, 811 (Fla. 1st DCA 1982). However, in the present case the claimant did unsuccessfully attempt employment, and her testimony as to those facts is sufficient to sustain the compensation award. To the extent that Kyle v. Davis, 435 So.2d 918 (Fla. 1st DCA 1983), and Harper *45 Plumbing & Heating v. Boyd, 418 So.2d 396 (Fla. 1st DCA 1982), suggest a contrary result, those opinions do not address the rationale of the decisions above noted. In the present case, unlike Harper and Kyle, the deputy specified his reasons for rejecting the physician's testimony as to work capacity, and there is no evidence that claimant acted arbitrarily or irresponsibly. Also in this case the doctor qualified his opinion by expressly noting that "I have no way of knowing what her pain threshold might be and what she might be able to tolerate or not," and further, "I think she did have residual pain and I had no reason to believe that her pain was not real." He also testified that AMA Guides permit rating pain as a residual.
Affirmed.
MILLS and BARFIELD, JJ., concur.